**SO ORDERED.**

**SIGNED this 5th day of August, 2015.**

_____
BENJAMIN A. KAHN
UNITED STATES BANKRUPTCY JUDGE

---

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF NORTH CAROLINA
GREENSBORO DIVISION

| | |
|---|---|
| IN RE: ) | |
| ) | |
| Tammy Lynn Bowden, ) | Case No. 14-10545 |
| ) | |
| Debtor. ) | |
| ) | |

**MEMORADUM OPINION REGARDING MOTION FOR SANCTIONS
FOR VIOLATION OF THE AUTOMATIC STAY**

This case came before the Court on May 12, 2015, on the Debtor's Motion for Sanctions [Doc. # 44] against Antonio Steele and Barry Nakell (the "Respondents") for violation of the automatic stay. The Respondents filed a Memorandum in Opposition to Motion for Sanctions, and New Motion for Sanctions [Doc. # 50] (the "Memorandum in Opposition") on May 5, 2015.[1] At the hearing, Tommy Blalock appeared on behalf of the Debtor, and Barry Nakell appeared on

---

[1] In their Memorandum in Opposition, Respondents request that the Debtor and her counsel be sanctioned under Rule 11 of the Federal Rules of Civil Procedure ("Rule 11") for filing the Motion for Sanctions. Rule 11 is supplanted in bankruptcy by Rule 9011 of the Federal Rules of Bankruptcy Procedure ("Rule 9011"). As the Court stated at the May 12, 2015 hearing, Rule 9011 states that a motion for sanctions "shall be made separately from other motions or requests" and "may not be filed with or presented to the court" unless the respondent is served with the motion as provided in Rule 7004 and does not withdraw or appropriately correct the problem within 21 days after service. Respondents failed to file the motion separately from their response to the Debtor's motion. They also filed the document with the Court prior to serving Debtor/Debtor's counsel and allowing 21 days for review. Moreover, for the reasons set forth herein, the Motion for Sanctions was not unfounded in fact or in law, or a good faith argument for the extension of law. Therefore, the Respondents' motion for sanctions shall be denied.

1

behalf of the Respondents. The Court has considered the record, applicable law, and the arguments of counsel, and finds that the Debtor's Motion for Sanctions should be granted. This Memorandum Opinion shall constitute the Court's findings and conclusions pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure.

## BACKGROUND

The Debtor filed a petition under Chapter 13 of the United States Bankruptcy Code on May 16, 2014 [Doc. # 1] (the "Petition") and listed Antonio Steele as an unsecured creditor (the "Creditor"). The Creditor Address Matrix notes Mr. Steele should be served care of the Law Office of Barry Nakell. Id. The Debtor's Notice to Creditors and Proposed Plan [Doc. # 2] was served at this address on May 16, 2014.

Mr. Nakell filed a proof of claim on behalf of Antonio Steele on July 1, 2014 [Claim No. 6]. The $11,057.20 claim is based on a judgment for trespass and conversion obtained by Mr. Steele on November 12, 2013, against the Debtor in an Orange County, North Carolina District Court civil action (the "State Court Judgment"). Mr. Nakell represented Mr. Steele in the underlying action.

Post-petition, Mr. Steele moved for relief from the automatic stay to transcribe the State Court Judgment [Doc. # 19] (the "Motion for Relief from Stay") and thereby perfect a judgment lien against the Debtor's real property in Guilford County.[2] The Court entered an order denying the requested relief [Doc. # 25], but noted in its Order that an ongoing appeal of the judgment, initiated by the Debtor, could continue, provided that the enforcement of any final judgment would remain subject to the automatic stay under 11 U.S.C. § 362.

On December 31, 2014, the North Carolina Court of Appeals affirmed the judgment in favor of Mr. Steele, with the exception of the trial court's denial of a small counterclaim filed by

---

[2] Mr. Steele made the request through his counsel, Mr. Nakell.

the Debtor, and remanded the case to the trial court. After the Debtor voluntarily dismissed the counterclaim, Respondents filed a Motion for Award of Attorney Fees (the "Fee Request") [Doc. # 50, Ex. 1] in the state trial court, seeking compensation for attorney's fees incurred in connection with the appeal.

The Fee Request was made under N.C. Gen. Stat. § 6-21.1, which allows a claimant in a property damage suit who recovers $25,000 or less in damages to request an award of attorney's fees if there "was an unwarranted refusal by the defendant to negotiate or pay the claim which constitute[d] the basis of [the] suit[.]" Id. Fees awarded under the statute are allowed as costs, but may not exceed ten thousand dollars. Id. In the Fee Request, Respondents seek an award of $10,000 and cite numerous pre-petition actions by the Debtor which they contend demonstrate an unwarranted refusal by the Debtor to negotiate or pay the claim at issue in the State Court Judgment, including that the Debtor: proposed a settlement offer while the matter was in state court, but then failed to comply with the terms of the agreement; and rejected Respondents' May 2, 2014, settlement offer while the case was pending on appeal. The Fee Request also asserts that the Debtor refused to participate in a post-petition appellate mediation on May 30, 2014, and that, save for the abovementioned, pre-petition offer, the Debtor never made any effort to remedy her wrongful conduct. Instead the Respondents state that during the prepetition litigation, the Debtor made false representations to the district court, failed to provide documentation to support her arguments in district court, some of which had no basis in any evidence, and refused to adhere to the rules of civil procedure or the rules of evidence. Despite the fact that the gravamen of the Fee Request purports to be statutorily authorized and justified by the Debtor's pre-petition actions, the request claims to seek limited relief, by asserting only those fees incurred by the claimant post-petition, from May 17, 2014 through January 7, 2015.

Shortly after Respondents initiated the Fee Request, but before the matter was heard in state court, the Debtor filed her Motion for Sanctions, alleging that the filing and prosecution of the Fee Request violated the automatic stay provisions of 11 U.S.C. § 362. The Motion for Sanctions further alleges that Mr. Nakell sought payment from the Debtor during the pendency of the bankruptcy proceeding, by attempting to settle the Fee Request on his client's behalf, and thereby committed another distinct, willful violation of the automatic stay.

In their Memorandum in Opposition, Respondents counter that the filing and prosecution of the Fee Request did not constitute a violation of the automatic stay, because the fees at issue arose out of an appeal voluntarily pursued by the Debtor post-petition. Since the Debtor chose to appeal the State Court Judgment and the Fee Request is limited to fees incurred post-petition, Respondents argue that Fee Request constitutes a claim that arose after the commencement of the bankruptcy case, and that filing the Fee Request and/or attempting to have the Debtor pay to resolve the claim therefore did not violate the automatic stay.

## DISCUSSION

Section 362 of the Bankruptcy Code provides that the filing of a bankruptcy petition operates as a stay, preventing certain actions against the debtor and the bankruptcy estate. The automatic stay is considered "an essential element of the bankruptcy process." Clayton v. King (In re Clayton), 235 B.R. 801, 806 (Bankr. M.D.N.C. 1998). Parties injured by a "willful" stay violation "shall recover actual damages, including costs and attorneys' fees, and in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362 (k)(1). A violation is willful when "[t]here is ample evidence in the record to support the conclusion that [the creditor] knew of the pending petition and intentionally attempted to [continue collection efforts] in spite of it." Hamrick v. United States (In re Hamrick), 175 B.R. 890, 892 (W.D.N.C. 1994) (quoting Budget Serv. Co. v. Better Homes of Va., Inc., 804 F.2d 289, 292–293 (4th Cir.1986)). "Neither good

4

faith nor a lack of specific intent to violate the automatic stay are defenses to a § 362(k) claim." Stancil v. Bradley Investments, LLC (In re Stancil), 487 B.R. 331, 343 (Bankr. D.D.C. 2013) (citing Univ. Med. Ctr. v. Sullivan (In re Univ. Med. Ctr.), 973 F.2d 1065, 1088 (3d Cir.1992) (interpreting what was then numbered § 362(h))).

In order to successfully recover damages under 11 U.S.C. § 362 (k), a debtor must establish that: (1) the creditor committed an act in violation of the automatic stay; (2) the violation was willful; and (3) the debtor was injured by the act.  In re Clayton, 235 B.R. at 806. In this case, there is no dispute that the Respondents had notice of the bankruptcy petition and engaged in intentional and deliberate post-petition acts.  See In re Drake, No. 09-52371, 2015 WL 393408, at *2 (Bankr. M.D.N.C. Jan. 6, 2015) ("An intentional act is one that that is done with determination to act in a certain way or to do a certain thing . . . [.]") (internal citations omitted)).  There also is no dispute that the Debtor incurred attorney's fees as a result of Respondents' actions, as evidenced by the Supplement to Motion for Sanctions, introduced at the May 12, 2015 hearing as Debtor's Exhibit 1 and outlining fees incurred by the Debtor in pursuit of the Motion for Sanctions.[3]  Therefore, the issue before the Court is whether Respondents' actions constituted violations of the automatic stay.

Among other prohibitions, the automatic stay acts as an injunction against the commencement or continuation of any action or proceeding "against the debtor that was or could have been commenced before the commencement of the case, or to recover a claim against the debtor that arose before the commencement of the case…." 11 U.S.C. § 362(a)(1).  The stay further prohibits "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case…." 11 U.S.C. § 362(a)(6).  To assess whether Respondents

---

[3] This exhibit reflects fees in the amount of $2,540, or compensation of $200 per hour for 12.7 hours, which the Court finds reasonable.  Although the Debtor also generally asserted that she had to miss work in connection with the motion for sanctions, the evidence was insufficient to establish any additional specific damages.

violated the automatic stay by filing and prosecuting the Fee Request, the Court must determine when the "claim" at issue arose. If the claim arose before the filing of the petition, then its prosecution was stayed under §§ 362(a)(1) and 362(a)(6).

The underlying claim in this case for property damage is an undisputedly pre-petition claim. Respondents contend that any request for attorneys' fees under N.C. Gen. Stat. § 6-21.1 is a post-petition claim to the extent that they limit the amount of the request to the fees incurred post-petition. Even if the Court construes the request as a separate "claim" for purposes of § 362, however, Respondents' argument is unavailing.

Section 101 of the Bankruptcy Code defines a claim as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured[.]" 11 U.S.C. § 101(5)(A). The Code does not define a "right to payment." Courts have adopted various tests to determine whether a creditor holds a pre-petition right to payment, or claim: (1) the conduct test; (2) the prepetition relationship test; (3) the fair contemplation test; and (4) the state law accrual test. See generally Bankruptcy Law Manual § 6:5 (5th ed.) (describing each test and noting that it is doubtful that any court now follows the state law accrual test; explaining that the Third Circuit, which created the state law accrual test in Matter of M. Frenville Co., Inc., 744 F.2d 332, 12 (3d Cir. 1984), has since overruled the case and now uses the conduct test). The Fourth Circuit has adopted the conduct test, which looks to whether the debtor's acts that gave rise to the liability occurred pre-petition or post-petition. See Grady v. A.H. Robins Co., Inc., 839 F.2d 198 (1988).

In Grady, the manufacturer, distributor, and seller of the Dalkon Shield filed for bankruptcy on the same day that the claimant, Mrs. Grady, was admitted to the hospital with

abdominal pain, fever, and chills. Id. at 199. Mrs. Grady eventually was diagnosed with pelvic inflammatory disease and underwent a hysterectomy. Id. She blamed the shield for her injuries and instituted a civil action against the debtor. Id. She also filed a motion in the bankruptcy court, seeking a determination that her claim arose after the filing of the petition, so that her actions would not be stayed. Id. The bankruptcy court determined that Mrs. Grady's claim "arose" when the act giving rise to the liability occurred, rather than when she experienced harm from the shield or her cause of action accrued under state law. Id. Thus, the bankruptcy court found that Mrs. Grady's claim arose pre-petition, upon the insertion of the shield. Id.

On appeal, the Fourth Circuit affirmed, emphasizing that Section 101(4) broadly defines a claim as a right to payment, whether contingent or fixed. Id. at 200. Though the debtor did not have an immediate right to payment under state law at the time of the insertion of the shield, the Fourth Circuit reasoned that she held a "contingent", or possible, but not assured, pre-petition claim for purposes of the automatic stay. Id. at 202-03; see also Ivey v. Hunter Acquisitions, Inc. (In re Carolina Acoustical and Flooring, Inc.), 415 B.R. 186, 192 (Bankr. M.D.N.C. 2008) (citing Grady for the proposition that "if the conduct or transaction giving rise to the claim occurred before the petition was filed, then the claim arose before the commencement of the case even though the claim may be contingent or unliquidated when the petition is filed").

As in Grady, the Debtor's alleged conduct giving rise to a claim for attorneys' fees under N.C. Gen. Stat. § 6-21.1 largely occurred pre-petition. In fact, the Respondents' Fee Request more clearly constitutes a pre-petition claim than the claims in Grady. In Grady, the claimant had not suffered any damages at the time of the filing of the debtor's bankruptcy petition. In this case, the claim for fees under N.C. Gen. Stat. § 6-21.1 would be construed as a pre-petition claim even if this circuit followed the more stringent accrual test.

According to the Fee Request, by the time the Debtor filed for bankruptcy, Respondents already had incurred fees in connection with the prosecution of the underlying claim and the appeal.[4] In fact, the Respondents filed a pre-petition motion requesting that the trial court award fees under N.C. Gen. Stat. § 6-21.1 after the entry of the State Court Judgment, but did not pursue the request (the "Initial Fee Request"). (Fee Request at 5, n.1). Following the Debtor's unsuccessful appeal, they filed the renewed Fee Request purporting to limit the award to post-petition fees, but nevertheless seeking the statutory maximum in fees that a claimant may recover as costs under N.C. Gen. Stat. § 6-21.1. Although the Respondents have asserted that they limited their request to fees incurred for services provided post-petition, this is a dubious argument in light of the statutory cap contained in N.C. Gen. Stat. § 6-21.1. That is, it does not matter whether the Respondents limited their request to post-petition fees because the Fee Request could not have been any larger under the statutory cap. If the Respondents had included the pre-petition fees in their Fee Request, or if the trial court had awarded the statutory maximum pursuant to the Initial Fee Request, certainly the Respondents could not have sought a further, purportedly post-petition claim for additional fees in excess of the amount authorized by statute in order to transform an otherwise pre-petition claim into a post-petition claim. The effect of the Respondents' argument, however, would be to permit precisely such a result. If the Court were to support the argument advanced by the Respondents, creditors in North Carolina could manipulate their fee requests under N.C. Gen. Stat. § 6-21.1 and thereby convert indisputably pre-petition claims into non-dischargeable post-petition obligations, as the Respondents are attempting to do here. A creditor "cannot[, however,] manufacture a purely post-petition claim

---

[4] The Court makes no ruling herein as to whether Respondents are, in fact, entitled to an award of attorney's fees under the statute.

based on a claim limited to post-petition dates." Avaya, Inc. v. Matthews (In re Matthews), 458 B.R. 623, 626 (Bankr. N.D. Ga. 2011).

The Debtor's conduct upon which the Respondents base the Fee Request further demonstrates the pre-petition nature of the claim. Almost all of the actions giving rise to the Respondents' alleged right to relief under N.C. Gen. Stat. § 6-21.1 occurred pre-petition. For purposes of this case, in order to be entitled to fees under N.C. Gen. Stat. § 6-21.1, the claim for fees must arise in a property damage suit and the debtor must have unreasonably refused to negotiate or pay the claim. Id. All the Debtor's actions causing the underlying property damage occurred well in advance of the petition date. In the Fee Request, Respondents contend that the Debtor's unreasonable refusal to negotiate or pay the property claim began at the moment of the events giving rise to the State Court Judgment and continued when the Debtor rejected a concrete settlement offer from Respondents, who had already won in state court. In fact, by filing the Initial Fee Request, Respondents necessarily contend that the Debtor's pre-petition conduct wholly justified a fee award in connection with the underlying claim. The fact that the Respondents chose not to pursue this request pre-petition does not transform the nature of their claim under N. C. Gen. Stat. § 6-21.1 into a post-petition claim, nor does it convert additional post-petition fees incurred by the claimant, which may have otherwise exceeded the statutory cap, into post-petition obligations.[5]

In order to determine whether there is a right to relief under N.C. Gen. Stat. § 6-21.1, North Carolina courts must consider the entire record of the case, Washington v. Horton, 132

---

[5] Regardless of the pre-petition nature of the "claim," the Initial Fee Request itself demonstrates that the post-petition filing of the Fee Request violated the automatic stay. Section 362(a)(1) prohibits "the commencement or continuation … of a judicial, administrative or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case, or to recover a claim against the debtor that arose before the commencement of the case…." (emphasis added). By using "or" as a disjunctive, the statute prohibits either commencing a proceeding that could have been commenced pre-petition or attempting to recover a claim that arose before the commencement of the case. By filing the Initial Fee Request, the Respondents necessarily conceded that a proceeding under N.C. Gen. Stat. § 6-21.1 could have been commenced before the commencement of the case.

N.C.App. 347, 351, 513 S.E.2d 331, 334-35 (1999). Acts are viewed in their entirety, rather than in isolation. Id. Analyzed in light of the circumstances of the record of the state court action, the Fee Request cannot be construed as a separate and independent claim for purposes of the automatic stay simply due to Respondents limiting the request to post-petition fees. The fact that the Respondents incurred additional fees post-petition, or that the Debtor rejected appellate mediation post-petition, does not transform the pre-petition claim under N.C. Gen. Stat. § 6-21.1 into a post-petition obligation.[6]

Respondents attempt to re-cast the claim under N.C. Gen. Stat. § 6-21.1 by relying upon cases that have permitted post-petition fee awards where a debtor voluntarily "returns to the fray" by engaging in litigation post-petition. These cases recognize the general rule that when a debtor voluntarily enters or returns to the litigation "fray" post-petition, he/she should be held responsible for liabilities which ensue, including any resulting attorney fee assessments awarded in connection with the post-petition litigation. See, e.g., Boeing N. Am., Inc. v Ybarra (In re Ybarra), 424 F.3d 1018, 1027 (9th Cir. 2005) ("[W]e reaffirm that claims for attorney fee and costs incurred post-petition are not discharged where post-petition, the debtor voluntarily commences litigation or otherwise voluntarily returns to the fray." (internal citations omitted)); Siegel v. Federal Home Loan Mortg. Corp., 143 F.3d 525, 533 (9th Cir. 1998) ("[The Debtor] chose to return to the fray and use the contract as a weapon. It is perfectly just, and within the purposes of bankruptcy, to allow the same weapon to be used against him."); Malin v. J.P. Morgan Chase Bank, N.A., No. 3:11-CV-544-TAV-HBG, 2014 WL 820003, at * 5 (E.D. Tenn. 2014) (following Ybarra and Siegel); see also Shure v. Vermont (In re Sure-Snap Corp.), 983

---

[6] The record before the Court does not conclusively establish the amount of fees requested in the Initial Fee Request. To the extent that the Initial Fee Request sought fees in the amount of the statutory cap, the Respondents' claim for fees was neither contingent nor unliquidated on the Petition Date because no additional fees could have been awarded due to the statutory cap provided in N.C. Gen. Stat. § 6-21.1. Regardless, under Grady, even if the claim was partially unliquidated or partially contingent, it is a pre-petition claim for the reasons set forth herein.

F.2d 1015, 1018 (11th Cir. 1993) (discussing the discharge ramifications of pursuing an appeal post-confirmation in a Chapter 11; finding that a Chapter 11 debtor, who appealed a bankruptcy court's final judgment post-confirmation, "did so at the risk of incurring post-confirmation costs involved in its acts"); Grynberg v. Danzig Claimants (In re Grynberg), 143 B.R. 574 (D. Colo. 1990) ("In this case, there was no pre-petition agreement entitling appellees to costs on appeal. These costs would not have been incurred had the [Debtors] not decided to continue the appellate process."), aff'd on other grounds, 966 F.2d 570, 572 (10th Cir. 1992) (although affirming the district court, the Tenth Circuit specifically rejected its reasoning, stating, that "[w]hile it is superficially tempting to analyze this case based on whether the claim can be categorized as prepetition and thus subject to the stay, or postpetition and free from the stay, our evaluation persuades us that a different analysis is required"); Horton-Rushton v. Trent, 155 Wash. App. 1011 (2010).   These cases are inapposite.  A motion for fees under N.C. Gen. Stat. § 6-21.1 could have been (and was) commenced pre-petition in this case, the claim under the statute fully accrued pre-petition, and is subject to a statutory cap of $10,000.00.  Further post-petition litigation would not increase this cap or convert the claim into a post-petition claim.

Even without the pre-petition accrual of the claim or the statutory cap, these cases would be distinguishable.  With the exception of Grynberg, each of the cases relied upon by the Respondents involves debtors who voluntarily engaged in offensive post-petition litigation, seeking affirmative relief against third parties.  Rather than continuing the prosecution of a claim, the Debtor in this case continued her defense against a claim.  Where a debtor has the choice of either accepting allowance of an objectionable claim against her or defending it, the debtor has not "voluntarily" returned to the fray.

The necessity of the Debtor's actions in this case is directly analogous to a debtor filing an objection to a filed proof of claim. If the Debtor had not filed her pre-petition appeal of the state court judgment, it would have become final and res judicata. In order to challenge Respondents' claim, the Debtor was required to appeal the State Court Judgment in the state court appellate process. As with the state court judgment, a filed proof of claim is deemed allowed under 11 U.S.C. § 502(a) unless an objection to the claim is filed. If the Court were to construe any post-petition litigation regarding the efficacy of a claim as "voluntarily returning to the litigation fray," the claims allowance process itself could create post-petition claims for attorneys' fees and eviscerate the "fresh start" envisioned by the Code. Cf. In re Mason, 509 B.R. 341, 344 (Bankr. D. Colo. 2014) (noting that when a debtor's actions are defensive in nature, they "do not rise to the level of affirmative action or 'returning to the fray' which the Ninth Circuit found in Ybarra created a new post-petition debt").

The only case relied upon by the Respondents to support their argument that fee awards in defensive litigation constitute post-petition obligations is Grynberg.[7] In Grynberg, the district court concluded that the debtors, who continued the appeal of a judgment against them post-petition, did so "'at the risk of incurring the post-petition costs involved in [their] acts.'" Grynberg, 143 B.R. at 577 (quoting In re Hadden, 57 B.R. 187, 190 (Bankr. W.D.Wis. 1986)). The case relied upon by the court in Gyrnberg for this broad statement, however, involved a debtor who offensively filed a breach of contract claim against a construction company, which counterclaimed for its attorneys' fees. Id. In broadly determining that the costs awarded to the defendant constituted a post-petition claim, the Grynberg court did not recognize the distinction

---

[7] Actually, Respondents cite the Tenth Circuit's opinion in Grynberg, rather than the district court's opinion which construed the fee award as a post-petition obligation. As indicated above, the Tenth Circuit specifically rejected the district court's rationale in this regard. Grynberg, 966 F.2d at 572.

between offensive and defensive litigation, nor did it discuss the effect such a broad rule potentially would have on the claims allowance process. In any event, to the extent that the district court opinion in Grynberg suggests that fee awards in post-petition defensive litigation categorically constitute post-petition obligations without regard to the nature and basis of the post-petition fees, its holding is contrary to the holding by the Fourth Circuit in Grady. Therefore, the Court declines to extend its holding to the facts in this case.[8]

In addition to the cases cited by Respondents, the Court has found one other case that construed fees awarded in a post-petition defensive litigation as post-petition obligations of the debtor. In In re Ruben, 774 F.3d 1138 (7th Cir. 2014), the United States Court of Appeals for the Seventh Circuit determined that arbitration fees awarded in connection with a debtor's post-petition defensive arbitration constituted a non-dischargeable post-petition obligation. The facts and procedure in Ruben are clearly distinguishable. Unlike this case, in Ruben: (1) the court was not considering the application of the automatic stay, but the extent of the discharge; (2) the "fees" awarded were the arbitrators' compensation, rather than opposing counsel's fees; (3) the

---

[8] The court in Grynberg recognized that fees allowable under a pre-petition note constitute a pre-petition obligation even if those fees are incurred post-petition because the right to recover those fees is based in the pre-petition contract. Grynberg, 774 F.3d at 577. See also Ins. Co. of N. Am. v. Sullivan, 333 B.R. 55, 61-62 (D. Md. 2005) ("[B]ecause the Indemnity Agreement between INA and K & W was entered into prepetition, the claim for attorney's fees arising from litigation spawned by that agreement is considered a prepetition claim."); In re Allred, No. 03-11315C-13G, 2004 WL 3502655, at * 2 (Bankr. M.D.N.C. Feb. 26, 2004) ("Most courts have concluded that if a claim is based upon a pre-petition contract, the claim will be treated as a pre-petition claim even if the time for performance, and hence the breach, occurs post-petition. The rationale is that a claim for breach exists once a contract is executed, although it may be inchoate and contingent." (internal citation omitted)). The rationale for this rule is indistinguishable from the Respondents' claim for fees under N.C. Gen. Stat. § 6-21.1. Where the statutory predicate to award fees is tied to a Debtor's pre-petition conduct as it is in this case, the pre-petition nature of the fee awards in connection with a pre-petition tort or a pre-petition evidence of indebtedness is indistinguishable. In such circumstances, both fee awards arise out of underlying pre-petition claims and conduct giving rise to the fees (i.e. one in contract and one in tort), but the fees are not necessarily incurred until post-petition. Just as with the provision authorizing the award of attorneys' fees under N.C. Gen. Stat. § 6-21.1, even contractual provisions permitting the recovery of attorneys' fees must be authorized by statute in order to overcome the American rule, see generally N.C. Gen. Stat. 6-21.2 (stating that contractual obligations to pay attorneys' fees are valid and enforceable). Therefore, with respect to the facts and circumstances of this case, there is no distinction between fees arising out of a pre-petition evidence of indebtedness that are authorized by statute and the Fee Request that arises out of a pre-petition tort and the Debtor's related pre-petition conduct.

creditor had asserted both fraud and negligence claims against the debtor, and the bankruptcy court previously determined in an adversary proceeding that the fraud claims were non-dischargeable; and (4) the debtor voluntarily chose to have any non-dischargeable fraud claims liquidated in the arbitration rather than by the bankruptcy court in the adversary proceeding. Id. at 1138-39. The arbitration panel awarded significant arbitrator fees against the debtor, and the Seventh Circuit ruled that these fees were a post-petition obligation that was non-dischargeable. Id. at 1141.[9]

The court in Ruben expressed concern that the debtor's conduct amounted to fraud, and implied that the fee award arose as a result of this conduct. Id. at 1140 (noting, inter alia, that the attorney disciplinary board had found the debtor's conduct to involve "fraud, dishonesty, deceit or misrepresentation"). The court also found that the debtor's voluntary effort to have the arbitrators liquidate the non-dischargeable claim "doom[ed]" the debtor's effort to discharge the fee award. Id. (observing that "arbitrators, being secretive, wielding very broad discretion, being far less rule-bound than courts—and not being paid for their work by the government—charge their salaries to the parties to the arbitration," and "[b]y asking to be allowed into the arbitration, Ruben voluntarily exposed himself to assessments…."). The existence of the non-dischargeable underlying fraud claim simply makes the rationale in Ruben inapplicable to this case. Cf. Cohen v. de la Cruz, 523 U.S. 213, 118 S.Ct. 1212 (1998) (punitive damages and attorneys' fees awarded in connection with non-dischargeable fraud claim are part of the non-dischargeable "debt").[10]

---

[9] In this case, there is no allegation that the underlying claim is non-dischargeable, and the deadline to file a complaint to determine the dischargeability of Respondents' claims has passed.

[10] Although the holding in Ruben is clearly distinguishable, the opinion nevertheless contains troubling and overly broad dicta. The court seemingly gratuitously noted that it was constrained to rule as it did, because otherwise, if "the bankrupt's postpetition activity, whether aggressive or defensive, is wasteful, improvident; then… denying discharge of the expense he incurs in that wasteful activity is a proper sanction…." Id. at 1141 (citing Ybarra and

14

Thus, the Court does not find Respondents' argument that the Debtor "voluntarily" returned to the fray persuasive, correct, or applicable in this case. As of the filing of the case, Respondents held a pre-petition claim under N.C. Gen. Stat. § 6-21.1, and the actions by Respondents to assess or recover that pre-petition claim as set forth herein constituted violations of the automatic stay.

## CONCLUSION

For the reasons stated herein, the Court finds that the filing and prosecution of the Fee Request in this case constituted an attempt to collect a pre-petition claim and the continuation of an action to assess that claim in violation of §§ 362(a)(6) and 362(a)(1) of the automatic stay. The Court further finds that Respondents' solicitation of payment from the Debtor to resolve the Fee Request, as admitted by Mr. Nakell at the May 12, 2015 hearing, constituted an additional attempt to collect, assess, or recover a claim against the debtor that arose before the commencement of the case, in violation of 11 U.S.C. § 362 (a)(6).[11]

---

Sure-Snap). Such a statement is dangerously overbroad and was entirely unnecessary to the court's holding. The plethora of remedies available to courts to sanction litigants for contumacious litigation—either at the trial or appellate level—negates this concern. See, e.g., Fed. R. Civ. P. 11; N.C. R. Civ. P. 11; N.C. R. App. P. 34. Sanctions for contumacious litigation which rely upon a debtor's post-petition conduct go far beyond statutory fee awards in connection with pre-petition claims such as the fee award contemplated in N.C. Gen. Stat. § 6-21.1. To the extent that a debtor's wholly post-petition conduct gives rise to sanctions under the rules cited above or other disciplinary authority of the courts, such sanctions ordinarily will constitute non-dischargeable post-petition obligations. See, e.g., Hermosilla v. Hermosilla (In re Hermosilla), 367 B.R. 244, 248-49 (Bankr. D.Mass. 2007) (finding that discovery sanctions imposed for the debtor's post-petition discovery abuses were non-dischargeable post-petition obligations). Not only is applying a blanket assumption that any assessment of post-petition fees in relation to a pre-petition claim will create a post-petition obligation, merely as a prophylactic against the possibility that some litigation might at some time be abusive, unnecessary, but it also is in direct contradiction to the well-settled presumption in favor of dischargeability, which the Seventh Circuit itself repeatedly has recognized. Stamat v. Neary, 635 F.3d 974, 979 (7th Cir. 2011) (citing In re Kontrick, 295 F.3d 724, 736 (7th Cir. 2002); In re Zarzynksi, 771 F.2d 304, 306 (7th Cir. 1985)).

[11] Even if the Fee Request were a post-petition claim, to the extent that the demand for payment contemplated the Debtor paying the Respondents from the Debtor's non-exempt assets, the demand itself constitutes a further violation of the stay under § 362(a)(3), which prohibits any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate. Property of a Chapter 13 estate includes "earnings from services performed by the debtor after the commencement of the case but before the case is closed, dismissed, or converted . . . ." 11 U.S.C. § 1306 (a)(2).

15

Therefore, the Court will enter an Order (1) GRANTING Debtor's Motion for Sanctions, (2) directing Respondents to pay $2,540 to the Debtor for actual damages and attorney fees within fourteen (14) days of the entry of the Order (3) directing Respondents to immediately withdraw the Fee Request, and (4) DENYING Respondents' motion for Sanctions, as requested in their Memorandum in Opposition.

[END OF DOCUMENT]